IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

EMPLOYERS MUTUAL CASUALTY
COMPANY,

    *Plaintiff*,

v.

    Case No. 23-CV-1213-EFM

KNIPP EQUIPMENT INCORPORATED
and BOARD OF COMMISSIONERS OF
EDWARDS COUNTY, KANSAS,

    *Defendants*.

**MEMORANDUM AND ORDER**

Before the Court is Plaintiff/Counter-Defendant Employers Mutual Casualty Co. ("EMCASCO")'s Motion for Summary Judgment (Doc. 39). EMCASCO—the insurer of Defendant Knipp Equipment, Inc. ("Knipp")—asserts that summary judgment be granted in its favor because it has no duty to indemnify Knipp for the arbitration award entered against it and in favor of Defendant/Counter-Plaintiff the Board of Commissioners of Edwards County, Kansas ("Edwards County"). Edwards County, as a third-party beneficiary to Knipp's insurance agreement, claims that EMCASCO breached its duty to indemnify Knipp for the damages suffered by Edwards County. But because the insurance policy affords no indemnity coverage under the specific facts and circumstances of this case, the Court grants EMCASCO's Motion for Summary Judgment.

I.      Factual and Procedural Background[1]

A.     **The Insurance Policy**

EMCASCO issued Knipp a commercial general liability insurance policy, Policy No. 3D5-97-29—17 (the "Policy"), with effective dates of September 1, 2016, to September 1, 2017. The Policy provides commercial general liability insurance coverage with limits of $1,000,000 for each occurrence and a $2,000,000 general aggregate limit. The Policy contains the following relevant provisions, among others:

> **SECTION I – COVERAGES**
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. . . .
> . . .
> **b.** This insurance applies to . . . "property damage" only if:
> **(1)** The . . . "property damage" is caused by an "occurrence[.]"
> . . .
> **2. Exclusions**
> This insurance does not apply to:
> **a. Expected Or Intended Injury**
> "[P]roperty damage" expected or intended from the standpoint of the insured. . . .
> . . .
> **j. Damage to Property**
> "Property damage" to:
> **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
> **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
> . . .
> **SECTION V – DEFINITIONS**
> . . .
> **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> . . .
> **17.** "Property damage" means:

---

[1] The facts are those uncontroverted by the parties unless otherwise cited.

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
    . . .
    **22.** "Your work":
    **a.** Means:
    **(1)** Work or operations performed by you or on your behalf; and
    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

**B.**    **The Arbitration**

    On May 20, 2016, Edwards County and Knipp entered into a contract for the removal and replacement of the Edwards County Courthouse's 113 windows, in exchange for $320,775, paid upon completion. The project was presumed completed and final payments were made by Edwards County to Knipp in February 2017. Approximately three weeks later, in response to a rainstorm, several of the Courthouse's windows began to leak on the north side of the building.

    On February 10, 2021, Edwards County filed a Statement of Claim against Knipp with the American Arbitration Association. In it, Edwards County claimed that Knipp breached its duty under the contract to perform the work and render the services owed to Edwards County in a good and workmanlike manner. Edwards County also alleged that as a result of Knipp's breach, the windows must be removed, re-sized, and re-installed, at the estimated cost of $420,000.

    On July 23, 2021, Edwards County filed its Pre-Hearing Brief. The brief explained that Edwards County does not seek loss of use damages. On July 25, 2021, Edwards County provided its Answers to Knipp's First Set of Interrogatories. In it, Edwards County stated that it did not attribute any damage to any personal property from the leaking windows. When Knipp asked whether Edwards County was alleging any other damages attributable to the construction claim or construction defect claim, Edwards County answered: "The windows were defectively designed

and improperly installed by Knipp. The damages sought are the costs of replacing the defective windows, and installing them properly so the windows of the courthouse do not leak."

The arbitration was conducted from July 26–29, 2021, with EMCASCO providing a defense to Knipp under a full and complete reservation of rights. During Edwards County's closing argument, its counsel stated: "[Edwards County] paid . . . for this job and it was done defectively. And [Edwards County] should be . . . made whole. . . . [U]sing the $420,000 as a base figure . . . . [would] compensate[] monetarily for – for this breach of contract."

On October 11, 2021, the Arbitrator entered an Arbitration Award (the "Award") in Edwards County's favor. The Arbitrator found that Edwards County was entitled to recover damages for the cost to correct all 113 window openings in the building. However, the Arbitrator reduced Edwards County's damages award from $420,000 to $405,620. Nonetheless, the Arbitrator held that Knipp was liable to reimburse Edwards County an additional sum of $4,500.01 in fees related to the arbitration, bringing the final total up to $410,120.01. Knipp was required to pay the Award within thirty days, with interest accruing from the date of the award at the current Kansas post-judgment interest rate. However, Knipp never paid.

On September 12, 2022, Edwards County filed a Petition to Confirm Arbitration Award and Enter Judgement in the District Court of Edwards County, Kansas, alleging that Knipp had paid no part of the Award. Throughout the arbitration and state court litigation, EMCASCO sent Knipp's designated representative various letters consistently denying a duty to indemnify.

C.     **Procedural History**

On October 4, 2023, EMCASCO filed suit against Knipp and Edwards County in this Court. On February 12, 2024, EMCASCO and Knipp entered into a settlement agreement wherein they stipulated that the Policy provides no applicable coverage with respect to the Award, and EMCASCO has no duty to indemnify Knipp with respect to the Award.

On April 1, 2024, Edwards County filed a Counterclaim against EMCASCO, asserting its rights as a third-party beneficiary to Knipp's insurance agreement and claiming that EMCASCO breached its duty to indemnify Knipp for the damages Knipp caused.

On July 17, 2024, EMCASCO moved for Summary Judgment seeking a declaratory judgment that Knipp's breach of contract with Edwards County does not fall within the Policy's insuring agreement, the Policy contains several exclusions that separately bar coverage, and EMCASCO has no duty to indemnify Knipp for the Award entered against it. EMCASCO argues that the resolution of these issues simultaneously resolves Edwards County's counterclaim. Edwards County filed its Response, and EMCASCO filed its Reply.

In accordance with the settlement agreement, Knipp's Response conceded to EMCASCO's Motion by choosing to present no evidence, argument, or comment on its behalf in opposition to the Motion. In fact, Knipp explicitly stated that it agreed with EMCASCO that judgment should be entered against it for the relief requested in the Complaint.

On November 21, 2024, EMCASCO moved for a hearing on the Summary Judgment issues. The matters, being fully briefed, are ripe for the Court's ruling.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[5] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[7]

### III.   Analysis

The interpretation of an insurance policy's meaning is a question of law to be determined by the court.[8] "In construing an insurance policy, a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter, and the purpose to be accomplished."[9] It is the burden of the insured to prove coverage under an insurance policy.[10] Once the insured has met its burden of establishing coverage under the policy, the burden shifts to the insurer to show that a specific exclusion applies.[11]

Here, the parties ask the Court to determine whether EMCASCO must indemnify Knipp for the Award. EMCASCO contends that the Policy affords no indemnity coverage because Knipp's breach of contract with Edwards County does not constitute an "occurrence" or "property

---

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[5] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[8] *See Everest Indem. Ins. Co. v Jake's Fireworks, Inc.*, 501 F. Supp. 3d 1158, 1174 (D. Kan. 2020).

[9] *Id.* (citing *Iron Horse Auto, Inc. v. Lititz Mut. Ins. Co.*, 283 Kan. 834, 156 P.3d 1221, 1225 (2007)).

[10] *See Shelter Mut. Ins. Co. v. Williams*, 804 P.2d 1374, 1383 (Kan. 1991).

[11] *Id.*

damage" as defined under the Policy. Thus, EMCASCO argues that the insuring agreement does not cover Knipp's breach. Moreover, EMCASCO claims that the Policy's "Expected or Intended Injury Exclusion" and "Property Damage Exclusion" each separately bar coverage.

Edwards County responds with two arguments. First, it contends that Knipp's performance was negligent—not intentional—so the Expected or Intended Injury Exclusion does not apply. Second, it claims that the Property Damage Exclusion was deleted from the parties' agreement, which either retains coverage or creates an ambiguity warranting strict construction of the Policy against the insurer. The Court will address each argument in turn.

### A. "Occurrence" Defined

EMCASCO asserts that no "occurrence" took place because Knipp's flawed construction was decisive and intentional. Edwards County argues that even if Knipp's performance was inept, it was not intentional or intended within the meaning of established tort law.

The Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage.'" However, the Policy limits coverage of property damage to that which is "caused by an 'occurrence.'" The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The Policy does not define "accident," which means that "an interpretation by law shall apply rather than an interpretation by contractual language."[12] "Where the term is not defined in the policy, it must be interpreted in its usual, ordinary, and popular sense."[13] Kansas courts often define an accident as "an undesigned, sudden, and unexpected event, usually of an afflictive or

---

[12] *Fid. & Deposit Co. v. Hartford Cas. Ins. Co.*, 189 F. Supp. 2d 1212, 1216 (D. Kan. 2002) (quoting *Brumley v. Lee*, 265 Kan. 810, 822 (Kan. 1998)).

[13] *Id.*

unfortunate character, and often accompanied by a manifestation of force."[14] Where undefined in an insurance policy, "accident" has been interpreted by Kansas courts to mean an unintentional act.[15]

"In determining for insurance purposes whether the damages resulting from an insured's acts were accidental and therefore an occurrence under a policy, the state of Kansas follows the natural and probable consequences test."[16] Under this test, an insured's intent to injure can be inferred if the resulting injury, from the standpoint of the insured, is the natural and probable consequence of the act ultimately causing the injury.[17] A finding of specific intent to injure is not necessary.[18] Alternatively, even if an act itself is intentional, it may result in an unintended injury.[19] Thus, when determining whether an insurer is required to defend an insured under a policy barring coverage for intentional injuries, the Court must examine whether the injury for which insurance coverage is being sought was the natural and probable consequence of the insured's act.[20]

Here, the Arbitrator made several determinations. First, he found that Knipp and its subcontractor "decided—without consulting [the architecture firm]—to remove the historic steel window frames and mortar at each location." Second, he found that Knipp and its subcontractor failed to perform "an invasive examination around an existing window to ascertain" the windows'

---

[14] *See e.g.*, *Wichita Firemen's Relief Ass'n v. Kan. City Life Ins. Co.*, 609 F. App'x 530, 533 (10th Cir. 2015); *Schlup v. Depositors Ins. Co.*, 426 F. Supp. 3d 831, 836 (D. Kan. 2019).

[15] *See e.g.*, *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 137 P.3d 486, 493 (2006) (holding that an occurrence is avoided "when an act results in an intentional injury"); *Md. Cas. Co. v. Mike Miller Cos.*, 715 F. Supp. 321, 323 (D. Kan. 1989) (finding an insured's intentional breach of contract did not constitute an "occurrence" under a general liability policy as an "accident").

[16] *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1245 (10th Cir. 2006).

[17] *Harris v. Richards*, 254 Kan. 549, 867 P.2d 325, 327–28 (Kan. 1994).

[18] *Id.* at 328.

[19] *State Farm Fire & Cas. Co. v. Falley*, 23 Kan. App. 2d 21, 926 P.2d 664, 668 (1996).

[20] *Park Univ. Enters.*, 442 F.3d at 1245.

"pre-existing water-resistant" qualities. Third, he found that Knipp committed "a material breach of . . . contract and a breach of its implied warranty of workmanlike performance" due to its "failure to install either thru-wall flashing at the window heads or a window system incorporating a head receptor in place of head flashing." These decisions ultimately led to Edward County's damages.

EMCASCO argues that Knipp's acts were not accidental because they were not "undesigned, sudden, or unexpected events." Rather, they were intentional decisions to subvert the architecture firm, which would lead any reasonably prudent construction company to expect leaking windows. EMCASCO claims that these intentional acts resulted in an inevitable result, so they cannot constitute an "occurrence" under the Policy.

Edwards County claims that Knipp's poor judgment does not constitute an intentional act because Knipp did not intend to cause Edwards County injury. The Court is unpersuaded by this claim. As explained above, specific intent to injure is unnecessary so long as the resulting injury was the natural and probable consequence of the act ultimately causing the injury. Here, the uncontroverted evidence demonstrates that Knipp's decisive acts and omissions led to their natural consequence—i.e., window damage—which inevitably required their removal and replacement. Although Knipp may have not intended to cause this specific harm, its subversion of the architecture firm was certainly not accidental. Because the window damage was not accidental, it was neither the result of an occurrence. As such, the Policy does not provide coverage for the window damage. Therefore, EMCASCO is entitled to summary judgment on this issue.

### B.      "Property Damage" Defined

EMCASCO contends that no "property damage" occurred because defective installation of property without any actual or resulting physical injury to it does not qualify as "property damage." Edwards County does not respond to this argument.

The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property. . . . or [l]oss of use of tangible property that is not physically injured."

Kansas courts have held that "physical injury to tangible property" means "damage to tangible property causing an alteration in appearance, shape, color or in other material dimension."[21] However, the mere incorporation of a defective product or the mere defective installation of property without any actual or resulting physical injury to tangible property does not qualify as "property damage."[22]

Here, the Award only contemplated damages for Knipp's "construction defect." Edwards County did not ask for damages to compensate it for "physical injury to tangible property" or "loss of use." Rather, the Award entitled Edwards County to the "cost to correct the water-resistant barrier at the Courthouse window[s]." Accordingly, this Award was designed to compensate for the defective installation of the windows—not for any physical damage to the windows.

Edwards County does not respond to this argument. On this issue, the Court finds that EMCASCO has demonstrated that no material issues of fact remain, and it is entitled to judgment as a matter of law.[23] Thus, the Court grants EMCASCO summary judgment on this issue.

### C. Policy Exclusions

Next, EMCASCO argues that two Policy exclusions further preclude it from covering Knipp's breach: the "Expected or Intended Injury Exclusion" and the "Property Damage

---

[21] *Fid. & Deposit Co. of Md. v. Hartford Cas. Ins. Co.*, 215 F.Supp.2d 1171, 1183 (D. Kan. 2002).

[22] *Id.* at 1181 (citing *Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 266 F.3d 859, 862 (8th Cir. 2001)); *see also Hartford Accident & Indem. Co. v. Pac. Mut. Life Ins. Co.*, 861 F.2d 250, 255 (10th Cir. 1988) ("Since the insured's products and installation are not property damage to which the insurance applies, any consequential damages caused by such products and installation are not covered.")

[23] *See Evans v. Fed. Express Corp.*, 76 F. App'x 263, 265 (10th Cir. 2003) (holding that a party's failure to respond on summary judgment is not, by itself, a sufficient basis on which to enter judgment against the party)

Exclusion." The Expected or Intended Injury Exclusion precludes coverage for "'property damage' expected or intended from the standpoint of the insured." The Property Damage Exclusion precludes coverage for damage to the property "on which [Knipp] or any contractors or subcontractors working directly or indirectly on [Knipp's] behalf are performing operations, if the 'property damage' arises out of those operations."

EMCASCO brought these arguments in the alternative had the Court found that Knipp's breach of contract with Edwards County constituted an "occurrence" resulting in "property damage." But the Court found that no occurrence took place, and no property damage occurred—both of which are necessary to trigger the aforementioned exclusions. Thus, the Court need not address either of these alternative arguments since each exclusion is premised on facts not applicable in this case. As such, EMCASCO's alternative arguments about the Policy exclusions are moot.

In sum, Knipp's breach of its contract with Edwards County does not constitute an "occurrence" or "property damage" within the meaning of the Policy's insuring agreement. Therefore, EMCASCO has no duty to indemnify Knipp for its $410,120.01 in damages awarded to Edwards County. Consequently, EMCASCO is entitled to summary judgment on Edwards County's counterclaim against it for breach of the duty to provide coverage under the insurance contract.

**IT IS THEREFORE ORDERED** that Plaintiff/Counter-Defendant EMCASCO's Motion for Summary Judgment (Doc. 39) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff/Counter-Defendant EMCASCO's Motion for Hearing (Doc. 46) is **DENIED as moot.**

**IT IS SO ORDERED.**

Dated this 11th day of February, 2025.

This case is closed.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE